[No. 26967. Department Two. April 29, 1938.]

THE STATE OF WASHINGTON, *on the Relation of Floyd Morgan, Respondent,* v. ELI AALGAARD, *Appellant.*[1]

[1]Reported in 78 P. (2d) 596.

*Thos. K. Chambers,* for appellant.

*A. H. Ward* and *Condon V. Barclay,* for respondent.

BEALS, J.—An election was regularly called for March 6, 1937, for the purpose of choosing one school director for a three year term for Day Creek school district, officially designated as district No. 32, Skagit county, Washington. Relator, Floyd Morgan, and (Mrs.) Eli Aalgaard, defendant herein, were the opposing candidates. After the close of the poll, the election board canvassed the ballots and made return to the county superintendent to the effect that Mrs. Aalgaard had received forty-seven votes, and Floyd Morgan forty-five votes. A certificate of election was issued to Mrs. Aalgaard, which, within ten days after the election, together with her oath of office and signature, was filed in the office of the county superintendent of schools.

May 1, 1937, Floyd Morgan filed in the superior court for Skagit county his complaint in *quo warranto,* alleging the holding of the election; that at the election he received a majority of the votes cast; and that March 15, 1937, the clerk of the election board issued to him a certificate of election, which, together with his oath of office and signature, had been filed in the office of the county superintendent. Relator further alleged that, at the organization meeting of the directors of the school district, the defendant, Eli Aalgaard, appeared and claimed the office of school director, whereupon relator demanded of defendant the possession of the office, with which demand defendant has refused to comply; and that the defendant holds the office of school director to the exclusion of relator. Relator

prayed that he be declared the lawful holder of the office, and that Mrs. Aalgaard be excluded therefrom.

The defendant answered the complaint, alleging that the election had been held, and that she had received a majority of the votes cast for the office of school director and thereafter received a certificate of election, as above stated. Relator replied, denying the affirmative allegations of defendant's answer.

The action was tried to the court, and resulted in the entry of findings of fact to the effect that the election had resulted in a tie, each candidate receiving forty-six votes. The court concluded that both the certificates of election above referred to should be canceled and entered judgment to that effect, declaring that no person had been elected to the office of school director of district No. 32. From this judgment, defendant, Eli Aalgaard, has appealed.

Error is assigned upon a finding of the trial court to the effect that one Andrew Maddox was not a legal voter of the district at the time he cast his ballot at the school election which is the basis of this proceeding, and that his vote for appellant should not be counted. Error is also assigned upon the ruling of the court counting as legal three irregular ballots, hereinafter described. Appellant also complains of the entry of the judgment appealed from, contending that the court should have declared her regularly elected to the office of school director.

The following facts are disclosed by the evidence: One Andrew Maddox presented himself as a qualified voter at the polling place, and received and cast a ballot. Later in the day, a brother of candidate Morgan, in a conversation with Maddox, convinced him that he was not a qualified voter, and Maddox returned to the polling place, and, after some discussion between him and the election officials, it was ap-

parently agreed that he was not entitled to vote. Mr. Maddox stated that he had voted for Mrs. Aalgaard, and when the ballot box was opened, the election officials withdrew and did not count one ballot cast for Mrs. Aalgaard, intending thereby to cancel the Maddox ballot.

The trial court heard evidence as to the qualifications of Mr. Maddox as a voter and found that he was not, at the time of the election, a legal resident of the school district, and was therefore not a qualified elector therein. The court further found that Mr. Maddox had voted for Mrs. Aalgaard, and that, as the election officials had withdrawn one vote for Mrs. Aalgaard, the total vote as returned by them was not affected by the fact that Mr. Maddox had voted. In view of our opinion upon another question presented, it is not necessary to discuss this matter further.

Laws of 1933, chapter 50, § 1, p. 282 (Rem. Rev. Stat. (Sup.), § 5024 [P. C. § 5164]), referring to elections of school directors, among other things provides as follows:

"The voting shall be by ballot. Official ballots of white paper of uniform size and quality shall be provided by the board of directors and shall contain the names of all candidates who have filed with the school clerk not less than ten days before the day of election a notice of their candidacy. Each person filing his name with the clerk shall designate the position for which he is a candidate. The names of no other candidates for school directors shall appear upon said official ballots and no other ballots shall be received or counted: *Provided,* That nothing herein contained shall prevent any voter from voting for any other person for such position by sticker or by writing in the name of such other person."

The ballots cast at the election were introduced in evidence, and are before us. They are approximately

rectangular pieces of white paper, three and one-half by three inches in size. Upon each appears the legend, "For three year term (Vote for one)," followed by the names Floyd Morgan and Eli Aalgaard, each name being followed by a typed line, upon which the voter should indicate his preference by writing an X. It appeared that the young lady who prepared these ballots employed ordinary typewriter paper, using two sheets of carbon paper, and writing upon each sheet as many ballots as it would conveniently contain, then cutting the sheet into separate ballots, as above described. Through inadvertence, she once typed Mr. Morgan's name twice, leaving out Mrs. Aalgaard's name, with the result that when the paper was cut, there were three ballots upon which Mr. Morgan's name appeared in both positions, and Mrs. Aalgaard's not at all. These ballots were passed out to voters, who marked the same, two marking X after Mr. Morgan's name on the upper line, and one marking an X after his name on the second line. When the ballots were counted, one of the election officials called off the vote from each ballot, while the other two tallied. On the trial, the official who did the calling testified that she called the vote from the usual position of the names on the ballot, calling those marked on the first line for Mr. Morgan, and those on the second line for Mrs. Aalgaard. Two of these ballots were accordingly counted for Mr. Morgan, and one for Mrs. Aalgaard, with the result that the board returned Mrs. Aalgaard as receiving forty-seven votes and Mr. Morgan forty-five.

On the trial, three witnesses were called by respondent, each of whom testified that he had received one of the ballots upon which Mr. Morgan's name appeared twice, and that, as the witness had intended to vote for Mr. Morgan, the fact that Mrs. Aalgaard's name did not appear upon the ballot which he received

seemed unimportant, and the ballot was marked and cast for Mr. Morgan. The trial court found that these three ballots had been voted by persons named in the findings, and that these three electors intended to vote for Floyd Morgan, and would not have voted for Eli Aalgaard had her name appeared on the ballot. The court also found that two of these ballots were counted for Mr. Morgan and one for Mrs. Aalgaard, and that the counting of one of these ballots for Mrs. Aalgaard was by error, mistake and inadvertence, which error the trial court found should be corrected. The court concluded that one vote should be taken from Mrs. Aalgaard's forty-seven, leaving her forty-six, and one voted added to Mr. Morgan's forty-five, making his vote also forty-six.

Article VI, § 6, of the constitution of this state, reads as follows:

"All elections shall be by ballot. The legislature shall provide for such method of voting as will secure to every elector absolute secrecy in preparing and depositing his ballot."

The legislature carried this constitutional provision into the act relating to the election of school directors, above quoted; this act also directly providing that ballots prepared for such elections shall contain the names of all candidates who have filed for the office.

In 9 R. C. L., title "Elections," 1049, § 66, it is stated that:

"Ballots not prepared and printed in accordance with law must be rejected although their rejection may disfranchise voters who are innocent of any fault in the matter."

The court of appeals of New York, in the case of *People ex rel. Nichols v. Board of Canvassers*, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624, held that certain ballots, which did not bear the official endorsement

required by the New York statute, should not be counted, and that the good faith of the voters who cast the defective ballots and of the election officials who received them was immaterial.

In the case of *State ex rel. Mize v. McElroy,* 44 La. Ann. 796, 11 So. 133, 32 Am. St. 355, 16 L. R. A. 278, the supreme court of Louisiana held that an act of the legislature providing

" 'That all the names of persons voted for shall be *printed* on one ticket or ballot of white paper, of uniform size and quality, to be furnished by the Secretary of State,' "

was mandatory, in so far as the requirement that the names of persons voted for should be printed was concerned.

In the case of *Kerr v. Flewelling,* 235 Ill. 326, 85 N. E. 624, the supreme court of Illinois held that a ballot, defectively printed, in that "parts of the circle and squares on the left-hand ticket" did not appear on the ballot, was a mutilated ballot, and should not be counted, even though the voter had marked a proper cross before the name of a candidate of another party whose candidates properly appeared on the ballot. The court said:

"The judges should not have handed this ballot to the voter, and, when they did, he should have asked them for one printed as the law required."

Respondent argues that, if the three ballots in question are rejected, the electors who voted such ballots are deprived of their constitutional right to vote, through no fault of their own, citing the case of *Moyer v. Van de Vanter,* 12 Wash. 377, 41 Pac. 60, 50 Am. St. 900, 29 L. R. A. 670. In the case cited, it appeared that the law then in effect provided that there should be printed on the back of the ballots, with a rubber or other stamp, the designation "official ballot," the name

or number of the election precinct, the name of the county, the date of the election, together with some other information, and that the inspector or one of the judges should initial each ballot on the back thereof. It appeared that, while the ballots in a certain precinct were properly stamped, the stamp was placed thereon after the voters had marked their ballots and when they were handed to the election officials to be deposited in the ballot box. It also appeared that no election official initialed the ballots. It was held that the failure to stamp the ballots before they were delivered to the voters was a mere irregularity, and that the failure to initial the ballots, as provided by the statute, did not authorize the rejection thereof, and that a statutory provision that ballots not bearing the initials of an election official should not be counted, could not be sustained, being unreasonable and in conflict with the right granted by the state constitution. The court found that the vote of the precinct in question ". . . was honestly and fairly cast and counted, and that there was nothing upon the face of the ballots to indicate how any particular voter voted, and that the objections raised thereto apply to all the ballots cast for each of the candidates."

The ballots cast were entirely regular on their face, and complied with the law. In using the same, the voters had every opportunity to express their choice, and the court properly held that the portion of the statute which would disfranchise many voters because the election officials, through ignorance, while properly stamping each ballot, failed to initial the same, was unreasonable and would violate the constitutional rights of the electors.

In the case at bar, the three questioned ballots were wholly irregular, and as prepared were in direct violation of the statute.

If three electors who voted at the election may be permitted to testify that they cast these three particular ballots, and intended to vote a certain way, and their testimony support a judgment that the ballots are good, the same rule should apply to thirty ballots, or all the ballots that were voted, and the rule should also be applied to a county or state election in which the names of many candidates for several offices appear on the ballot. If such absolutely defective and illegal ballots be upheld, the integrity of the ballot and of elections generally will be seriously impaired.

It is true that, in certain cases, one who voted at an election may, if he desires to do so, testify concerning his ballot and the person for whom he intended to vote, but this doctrine should not be extended to such a situation as is here presented.

In the case of *Anderson v. Winfree,* 85 Ky. 597, 4 S. W. 351, 11 S. W. 307, the court of appeals of Kentucky said:

"Where the elector casts his vote by secret ballot which is fatally defective, he ought not to be permitted to testify that he voted the particular ballot and intended it for a particular candidate."

The language of the supreme court of Illinois, above quoted, from the opinion in the case of *Kerr v. Flewelling, supra,* is peculiarly applicable to the facts of the case at bar. An election for directors of a school district is as much an election as one at which state officers are to be chosen. Ballots for any election called for by statute should be prepared with the greatest care. The officers responsible for the preparation of the ballots must devote their most particular attention to seeing that all of the ballots furnished for the use of voters comply in every way with the statute. Some responsibility also rests upon the voter. If he is offered a manifestly defective ballot, he should ask for a proper

one, and if he does not do so, cannot complain if his vote is not counted.

The principle underlying the question now under discussion is of great importance, and we are clearly of the opinion that it must be held that the trial court erred in holding that the three defective ballots should be counted for respondent, even though three witnesses testified that they had cast these identical ballots and intended to vote for candidate Morgan. These ballots cannot be counted.

The conclusion which we have reached upon the phase of the case last discussed renders unnecessary consideration of any of the other questions presented.

The judgment appealed from is accordingly reversed, with instructions to proceed in accordance with the views herein expressed.

STEINERT, C. J., BLAKE, ROBINSON, and MILLARD, JJ., concur.